UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
| v. | * |
| | * Criminal Action No. 1:22-cr-10251-ABD |
| CHRISTOPHER SWEENEY, | * |
| | * |
| Defendant. | * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Currently before the Court is Defendant Christopher Sweeney's motion to suppress narcotics evidence obtained during a search of his apartment at 74 Robinson Street in Lynn, MA (the "Apartment"). [ECF No. 43]. For the reasons set forth below, the motion to suppress is DENIED.

I.  BACKGROUND

A.  Investigation

On July 21, 2022, federal and local law enforcement officers executed a search warrant (the "Warrant") at Defendant's Apartment. [ECF No. 2 ¶ 6; ECF No. 47-2]. The Warrant was issued in connection with the investigation of a violent physical attack by members of the Hells Angels Motorcycle Club (the "Hells Angels") against a rival motorcycle gang. See, e.g., [ECF No. 47-6 at 19–22]. Defendant was alleged to have participated in the attack as a member of the Hells Angels. [Id. at 73–75].

For present purposes, the Warrant authorized the search for and seizure of evidence related to the commission of violent crimes in aid of racketeering in violation of 18 U.S.C.

§ 1959, and racketeering conspiracy in violation of 18 U.S.C. § 1962(d). Attachment-B to the Warrant described the items to be seized which, as relevant here, included:

> a. Any mobile electronic device, used by or belonging to [Defendant], capable of recording or storing geolocation information and/or sending or storing communications, including any mobile telephone and GPS device;
>
> b. Any item or record reflecting affiliation or communication with or among the Hells Angels or Sidewinders motorcycle clubs or persons affiliated with either of those clubs; [and]
>
> c. Any item or record reflecting Hells Angels or Sidewinders motorcycle clubs' membership, rules, structure, finances, interaction with law enforcement, interaction with other motorcycle clubs, meeting notes or minutes; . . . .

[ECF No. 47-2 at 4]. Special Agent Brad Reinalda ("SA Reinalda") was one of the individuals assigned to search the Apartment. At a hearing on May 31, 2022 (the "Hearing"), SA Reinalda testified that before searching the Apartment, he was briefed on the contents of Attachment B and understood that the warrant authorized a search for, among other things, electronics as small as a sim card; evidence of an affiliation with the Hells Angels, including stickers, patches and pins; and any evidence of Hells Angels membership, rules, structure, or finances, including written schedules of club events.

SA Reinalda was assigned to search the Defendant's bedroom, identified as Room G (the "Bedroom"). [5/31/2023 Hearing Ex. A]. While searching an armoire located in the Bedroom, he found a camera bag that contained $900 in cash, a digital scale, two plastic bags with smaller baggies inside, a spoon, and an approximately 3-by-3-by-1-inch lozenge box. [Compl. ¶¶ 9–11; 5/31/2023 Hearing Exs. C–E]. One end of the lozenge box was pushed in, and he could see a clear plastic bag inside. [Compl. ¶ 10; 5/31/2023 Hearing Exs. E–F]. SA Reinalda removed the plastic bag, and inside discovered what appeared to be narcotics (the "Narcotics Evidence"). Law enforcement officers conducted a field test and the substance in the bag tested positive for methamphetamine. [Compl. ¶ 13].

In addition to the Narcotics Evidence seized in the armoire, other Narcotics Evidence was seized in the Apartment, as well as Hells Angels motorcycle ride and events schedules, a piece of paper with Hells Angels members and their initiation dates, and Hells Angels pins and stickers. [Compl. ¶¶ 9, 12; 5/31/2023 Hearing Exs. H–M, S–V].

Following the search, Defendant was charged with knowingly and intentionally possessing with the intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(c).  See generally [Compl.].  On March 10, 2023, he moved to suppress the Narcotics Evidence.  [ECF Nos. 43–44].  The Government opposed the motion on March 31, 2023, [ECF No. 47], and a hearing was held on May 31, 2023, after which the Government filed a supplemental memorandum in support of its opposition.  [ECF No. 56].

## II.     DISCUSSION

The Fourth Amendment to the Constitution protects citizens against unreasonable searches and seizures, and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched . . . ."  U.S. Const. amend. IV. There is a "presumptive rule against warrantless searches," including when the only "defect [of the warrant] is a lack of particularity."  Groh v. Ramirez, 540 U.S. 551, 559 (2004).  There are several exceptions to this rule, including the doctrines of plain view, see United States v. Hernandez-Mieses, 931 F.3d 134, 140 (1st Cir. 2019); and inevitable discovery, see United States v. Siciliano, 578 F.3d 61, 68 n.4 (1st Cir. 2009); as well as the good faith exception, see United States v. Leon, 468 U.S. 897, 922 (1984).

Defendant does not argue that the Warrant as a whole was defective, but instead argues that the search was unconstitutional because it exceeded the scope of the Warrant, that part of the Warrant was facially overbroad, and further that the good faith exception does not save the fruits of the illegal search.  [ECF No. 44 at 6, 10, 12].  The Government responds that the Warrant was

3

not facially overbroad, the Narcotics Evidence was in plain view, its discovery was inevitable, and that, in any event, the search is protected by the good faith exception.  [ECF No. 47 at 7, 10, 12, 14].

    **A.**    **Plain View**

The plain view doctrine is an exception to the Fourth Amendment's warrant requirement that "permits the warrantless seizure of an item if the officer is lawfully present in a position from which the item is clearly visible, there is probable cause to seize the item, and the officer has a lawful right of access to the item itself." United States v. Hernandez-Mieses, 931 F.3d 134, 140 (1st Cir. 2019) (quoting United States v. Gamache, 792 F.3d 194, 199 (1st Cir. 2015)).

First, Defendant does not dispute that SA Reinalda was lawfully present in the Apartment and the Bedroom, or that SA Reinalda could open and search the armoire, and the main compartment of the camera bag.  [ECF No. 44 at 9].  What is disputed is the search of a lozenge box that was found inside the camera bag.  [Id. at 9–10].  According to SA Reinalda, the lozenge box was pushed open, revealing a plastic bag inside the box.  [Compl. ¶ 10; 5/31/2023 Hearing Ex. E & F].  Whether SA Reinalda properly opened the box turns on whether the warrant authorized the seizure of items that could fit into the lozenge box.  See United States v. Crooker, 688 F.3d 1, at 8–9 (1st Cir. 2012) ("'any container situated within residential premises which are the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant.'" (quoting United States v. Rogers, 521 F.3d at 9–10 (1st Cir.2008) (quoting United States v. Gray, 814 F.2d 49, 51 (1st Cir.1987))).  Here, because the warrant authorized the search for and seizure of small items that could fit inside of a 3-by-3-by-1-inch box, including, for example, pieces of paper, stickers and pins like those found in the Apartment, SA Reinalda could properly open and examine the

contents of the box. As a result, he was lawfully present in a position from which the Narcotics Evidence was in plain view. See id. (seizure was proper under plain view doctrine because agents "were in the house pursuant to a warrant supported by probable cause.").

Second, SA Reinalda had probable cause to search the box and seize the Narcotics Evidence. "Probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' . . . that certain items may be contraband . . . ." Texas v. Brown, 460 U.S. 730, 742 (1983) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). Inside of the camera bag, in addition to the lozenge box and its contents, SA Reinalda discovered several items consistent with drug possession and distribution—$900 in cash, a digital scale, two plastic bags with smaller baggies inside, and a spoon, [Compl. ¶¶ 10–11; 5/31/2023 Hearing Exs. D–E]. Collectively, the items in the camera bag and the lozenge box warranted SA Reinalda's reasonable belief that the Narcotics Evidence was contraband. See Crooker, 688 F.3d at 9 (probable cause supported for plain view doctrine where agents could see a rolling device "believed [to be] used to roll marijuana cigarettes.").

Third, for the same reasons explained above, particularly the fact that SA Reinalda was authorized to search for items that could fit inside of the lozenge box, SA Reinalda had a lawful right of access to the item itself. See Crooker, 688 F.3d at 8–9; see also United States v. Robles, 45 F.3d 1, 7 (1st Cir. 1995) (box in plain view that was "a possible repository for items mentioned in the warrant, such as papers, documents and photographs, of which seizure was authorized," was justified because "[j]ust as the agents could open closets, chests, doors and other containers, in order to look for these [items], they were authorized to open the box for that

purpose."). As a result, the Court finds that SA Reinalda's seizure of the Narcotics Evidence was permissible under the plain view doctrine.

**B.      Inevitable Discovery**

"Under the inevitable discovery doctrine, unlawfully obtained evidence that 'inevitably would have been discovered by lawful means' is admissible." Siciliano, 578 F.3d at 68 n.4 (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)). "[T]he government bears the burden of showing, by reference to demonstrated historical facts and by a preponderance of the evidence, that the information or item would inevitably have been discovered by lawful means." United States v. Delgado-Pérez, 867 F.3d 244, 258 (1st Cir. 2017) (quoting United States v. Infante-Ruiz, 13 F.3d 498, 503 (1st Cir. 1994)). "[I]n evaluating whether the government has met this burden, [the Court] consider[s] whether 'the lawful means of [evidence's] discovery are independent and would necessarily have been employed' absent the earlier unlawful search, and whether 'discovery by that [lawful] means is in fact inevitable.'" Id. (quoting United States v. Zapata, 18 F.3d 971, 978 (1st Cir. 1994)). The government must also show that the application of the doctrine in this "particular case will not sully the prophylaxis of the Fourth Amendment," Zapata, 18 F.3d at 978, or in other words, will not "encourage police misconduct." United States v. Soto-Peguero, 978 F.3d 13, 21 (1st Cir. 2020).

Here, even if SA Reinalda did not have lawful access to the contents of the lozenge box at the time of the search, its contents would have inevitably been discovered and seized by independent, lawful means. SA Reinalda explained at the Hearing that if he had not otherwise had lawful access to the contents of the lozenge box, he would have sought a drug warrant to search the lozenge box itself given the other drug-related evidence found in the Apartment and the camera bag. The Court has little doubt that such a search warrant would have issued. See

6

United States v. Grupee, 682 F.3d 143, 147 (1st Cir. 2012) (warrant to search for drug related evidence was valid where the "affidavit . . . described . . . drugs[] and drug paraphernalia the police had already seen while searching [the home]" pursuant to a different, valid search warrant, because the drug warrant "depended on observations lawfully made and properly counted in showing probable cause."). Moreover, the facts here do not support a finding that SA Reinalda engaged in any misconduct or exploited his presence in the home in a way that would sully the prophylaxis of the Fourth Amendment. See Soto-Peguero, 978 F.3d at 21–23 (finding allegations that officers, for example, "tore the residence apart," did not preclude application of the inevitable discovery doctrine). The Court thus finds the Narcotics Evidence located in the lozenge box would have been discovered pursuant to a lawful search warrant, and the seizure is therefore protected by the inevitable discovery doctrine.

    **C.**    **The Good Faith Exception**

The Supreme Court has held that suppression is inappropriate where an officer's good faith reliance on a warrant is reasonable. Leon, 468 U.S. at 922. By good faith, the Supreme Court means where law enforcement acted in "objectively reasonable reliance" on a defective search warrant. Id. The government bears the burden of demonstrating good faith. See United States v. Vigeant, 176 F.3d 565, 571–73 (1st Cir. 1999). Here, Defendant does not argue that the

search warrant as whole was defective.[1]  In any event, even if it were found defective, SA Reinalda's search would be protected by the good faith exception.

Although there are specifically enumerated circumstances in which the good faith exception does not apply,[2] Defendant does not argue that any one of those circumstances exist here.  See [ECF No. 44 at 12–14].  Instead, Defendant avers that the good faith exception does not apply because the search was made "objectively unreasonable" by officers exceeding the scope of the Warrant.  See [id.].  More specifically, the Defendant contends that the Warrant issued "to search for evidence—including large weapons—relating to the altercation and a suspected conspiracy to commit violence," and the ultimate search sought more than this type of evidence.  [Id. at 14].  This argument ignores the fact that the Warrant specifically authorized a search for evidence supporting charges for racketeering in violation of 18 U.S.C. § 1959 and racketeering conspiracy in violation of 18 U.S.C. § 1962(d), including for small electronic

---

[1] Though Defendant does not challenge the Warrant as a whole, he argues that "item f" in Attachment B of the Warrant is unconstitutionally vague and overbroad.  [ECF No. 44 at 10–12]. The Court does not need to reach that issue here because other items in the affidavit—including items a, b, and c, described above—are not challenged as unconstitutionally vague or overbroad and provide justification for the search that resulted in the seizure of the Narcotics Evidence. See supra.  It is unlikely, however, that "item f" would stand alone as sufficiently particular to justify the search of the Apartment.

[2] For example, when (1) the magistrate judge was knowingly or recklessly misled by an affiant, Leon, 468 at 923 (citing Franks v. Delaware, 438 U.S. 154, 155–56 (1978)), (2) the magistrate judge abandons her judicial role, id. (citing Lo–Ji Sales, Inc. v. New York, 442 U.S. 319, 326–29 (1979) (reversing denial of motion to suppress where local justice actively participated in a search based on a warrant the same justice issued)), (3) an affidavit supporting a warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[,]" id. (quoting Brown v. Illinois, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)), and (4) "a warrant is 'so facially deficient—i.e. in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid,'" U.S. v. Owens, 167 F.3d 739, 745 (1st Cir. 1999) (quoting Leon, 468 U.S. at 923).

devices, stickers, patches and pins, all of which could fit inside of a 3-by-3-by-1-inch lozenge box.  See [ECF No. 47-2 at 4].  Thus, as discussed above, SA Reinalda's search did not exceed the scope of the Warrant, and he relied on that Warrant in good faith when he discovered the Narcotics Evidence.  Moreover, nothing that SA Reinalda did was unreasonable under the circumstances before him, evidenced bad faith, or otherwise constituted the sort of misconduct that the exclusionary rule is intended to deter.

### III.   CONCLUSION

For the reasons described above, Defendant's motion to suppress is denied.

**SO ORDERED.**

July 19, 2023                                                     /s/ Allison D. Burroughs
                                                                           ALLISON D. BURROUGHS
                                                                           U.S. DISTRICT JUDGE